UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DOMINIQUE MICHELLE WASHINGTON,

Defendant.

Criminal No. 06-227-14

## DETENTION MEMORANDUM

The Defendant, Dominique Michelle Washington, also known as Michelle Washington, has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p).   The Government requested a detention hearing, which was held on February 16, 2007. At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond.  This memorandum is submitted to comply with the statutory obligation that "the

- 1 -

judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute PCP in the Washington, DC Metropolitan area, which took place from approximately September 2005 through at least July 27, 2006.  The Defendant was a courier in this scheme, one of a number who transported the PCP from California to Washington D.C.

Darnell Anthony Jackson and Troy Antoine Hopkins headed the conspiracy, which purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, a member of the L.A. based gang Mona Park Crips. After a purchase, the conspirators and couriers would buy shampoo, lotion, and Listerine, empty the bottles and fill them with PCP.  Then couriers  would fly from Long Beach Airport ("LGB") to Dulles International Airport ("IAD") carrying a gallon's worth of the bottles in their checked-in luggage.  It is alleged that the Defendant flew on 4 flights between the Washington, DC area to Long Beach, CA from September 2005 through July 2006.[1]  Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell it to wholesalers and distributors at various locations in Washington, DC and suburban Maryland.   From 12 bank accounts, the conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and "MoneyGrams " often purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.

---

[1] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of diluted PCP.  One gallon of liquid PCP equals approximately 3.7 kilograms of the drug.

Authorities surveilled and video taped the Defendant in Los Angeles on March 10, 2006 picking up the Mr. Jackson from Mr. Hilt's home in a rental car.[2] Mr. Jackson had been observed with Mr. Hilt at Mr. Hilt's home purchasing and picking up a gallon of PCP for $15,000. Mr. Jackson and Ms. Washington were both later seen at a beauty supply store purchasing shampoo bottles that they emptied and filled with PCP for transport eastward to the Washington D.C. Metropolitan area.

In July, bench warrants were issued for the conspirators and couriers, the majority of whom were apprehended shortly thereafter. The Defendant eluded capture, but was aware that she was wanted for her role in the conspiracy as proved by the three calls she subsequently made to the F.B.I. to inquire about turning herself in. However, she remained at large until arrested in Long Beach, California for prostitution and fraud.

## Discussion

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. § 3142(e). Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). When, as here, there is probable cause to believe that

---

[2] The rental car was rented in Ms. Washington's name.

a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight. In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention. The Defendant is charged with conspiracy to distribute massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention. The Government obtained airline records of the Defendant's regular travel between IAD and LGB. Also, the Government has oral evidence from a wiretap placed on Mr. Jackson's phone. The Defendant was discussed during several phone conversations by Mr. Jackson in connection with the conspiracy.

The third factor, the history and characteristics of the Defendant, supports pretrial detention. The Defendant was arrested for prostitution and fraud, which lead to her extradition to Washington

D.C.  As a resident of California, she poses a risk of flight.

The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention.  Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.


## **Conclusion**

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community.  The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case.  Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.


Dated: February  20  , 2007                      _____/s/_____
                                                 ALAN KAY
                                                 UNITED STATES MAGISTRATE JUDGE